Gideon Kracov (State Bar No. 179815)
LAW OFFICE OF GIDEON KRACOV
801 S. Grand Avenue, 11th Floor
Los Angeles, CA 90017-4645
Tel: (213) 629-2071
Fax: (213) 623-7755
Email: gk@gideonlaw.net

Michael R. Lozeau (State Bar No. 142893)
Richard T. Drury (State Bar No. 163559)
Douglas J. Chermak (State Bar No. 233382)
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205 (fax)
E-mail: michael@lozeaudrury.com
          doug@lozeaudrury.com

Attorneys for Plaintiff
CENTER FOR COMMUNITY ACTION
AND ENVIRONMENTAL JUSTICE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FILTER RECYCLING SERVICES, INC., a corporation, DOES 1 through 10,<br><br>Defendants. | Case No. _____<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL

JUSTICE ("CCAEJ" or "Plaintiff"), a California non-profit corporation, by and

through its counsel, hereby alleges:

## I.    **JURISDICTION AND VENUE**

1.      This is a civil suit brought under the citizen suit enforcement provisions

of the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.* (the "Clean

Water Act" or "the Act").  This Court has subject matter jurisdiction over the parties

and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33

U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the

United States).  The relief requested is authorized pursuant to 28 U.S.C. §§ 2201-02

(power to issue declaratory relief in case of actual controversy and further necessary

relief based on such a declaration); 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief);

and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

2.      On May 22, 2014, Plaintiff provided notice of Defendant's violations of

the Act, and of its intention to file suit against Defendant, to the Administrator of the

United States Environmental Protection Agency ("EPA"); the Administrator of EPA

Region IX; the Executive Director of the State Water Resources Control Board ("State

Board"); the Executive Officer of the California Regional Water Quality Control

Board, Santa Ana Region ("Regional Board"); and to Defendant FILTER

RECYCLING SERVICES, Inc. ("FILTER"), as required by the Act, 33 U.S.C. §

COMPLAINT

2

1365(b)(1)(A).  A true and correct copy of the notice letter is attached as Exhibit A, and is incorporated by reference.

3.      More than sixty days have passed since notice was served on FILTER and the State and federal agencies.  Plaintiff is informed and believes, and thereupon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. This action's claim for civil penalties is not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

4.      Venue is proper in the Central District of California pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

## II.   **INTRODUCTION**

5.      This complaint seeks relief for discharges of storm water and non-storm water pollutants from Defendant FILTER'S hazardous waste treatment and storage facility located at 180 W Monte Ave., Bloomington, California 92316 (hereinafter "Facility") in violation of the Act and National Pollutant Discharge Elimination System ("NPDES") Permit No. CA S000001, State Water Resources Control Board Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ and Water Quality Order No. 97-03-DWQ (hereinafter the "Permit" or "General Permit").  FILTER's failure to comply with the discharge, treatment

technology, monitoring requirements, and other procedural and substantive requirements of the Permit and the Act are ongoing and continuous.

## III.   PARTIES

6.      Plaintiff CCAEJ is a non-profit corporation under the laws of the State of California with its main office in Jurupa Valley, California.  CCAEJ dedicated to working with communities to advocate for environmental justice and pollution prevention.  CCAEJ and its members are deeply concerned with protecting the environment in and around their communities, including the Santa Ana River Watershed.  To further these goals, CCAEJ actively seeks federal and state agency implementation of the Act and other laws and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

7.      CCAEJ has members living in the community adjacent to the Facility and the Santa Ana River Watershed.  They enjoy using the Santa Ana River for recreation and other activities.  Members of CCAEJ use and enjoy the waters into which FILTER has caused, is causing, and will continue to cause, pollutants to be discharged.  Members of CCAEJ use those areas to recreate and view wildlife, among other things.  FILTER's discharges of pollutants threaten or impair each of those uses or contribute to such threats and impairments.  Thus, the interests of CCAEJ's members have been, are being, and will continue to be adversely affected by FILTER's failure to comply with the Clean Water Act and the Permit.  The relief

COMPLAINT

sought herein will redress the harms to Plaintiff caused by FILTER's activities.

8.     Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and its members, for which harm they have no plain, speedy or adequate remedy at law.

9.     Plaintiff alleges on information and belief that Defendant FILTER is a California corporation that operates the Facility in Bloomington, California.

10.     Upon information and belief, and upon that basis, Plaintiff alleges that the true names, or capacities of DOES 1 through 10, inclusive (the "DOES"), whether individual, corporate, associate or otherwise, are presently unknown to PLAINTIFF, who therefore sue said Defendants by such fictitious names.  Plaintiff will amend this Complaint to show their true names and capacities when the same have been ascertained.  Whether or not FILTER is associated with any other individual, corporate, associate or otherwise was not immediately apparent through an initial investigation completed by PLAINTIFF.

11.     FILTER and DOES 1 through 10 are referred to collectively throughout this Complaint as Defendant or Defendants.

## IV.    **STATUTORY BACKGROUND**

12.     Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States, unless such discharge is in compliance with various enumerated sections of the Act.  Among other things, Section 301(a)

prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

13.     Section 402(p) of the Act establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program.  33 U.S.C. § 1342(p).  States with approved NPDES permit programs are authorized by Section 402(p) to regulate industrial storm water discharges through individual permits issued to dischargers or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers.  33 U.S.C. § 1342(p).

14.     Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of the U.S. EPA has authorized California's State Board to issue NPDES permits, including general NPDES permits, in California.

15.     The State Board elected to issue a statewide general permit for industrial storm water discharges.  The State Board issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on or about April 17, 1997, pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p).

16.     In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit.  33 U.S.C. § 1311(a).

17.     The General Permit contains several prohibitions.  Effluent Limitation

B(3) of the General Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of the Best Available Technology Economically Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants. BAT and BCT include both nonstructural and structural measures.  General Permit, Section A(8).  Discharge Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.  Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges to any surface or ground water that adversely impact human health or the environment.  Receiving Water Limitation C(2) of the General Permit prohibits storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

18.     In addition to absolute prohibitions, the General Permit contains a variety of substantive and procedural requirements that dischargers must meet.  Facilities discharging, or having the potential to discharge, storm water associated with industrial activity that have not obtained an individual NPDES permit must apply for coverage under the State's General Permit by filing a Notice of Intent to Comply ("NOI").  The General Permit requires existing dischargers to have filed their NOIs before March 30, 1992.

19.     Dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP"). The SWPPP must describe storm water control facilities and measures that comply with the BAT and BCT standards. The General Permit requires that an initial SWPPP have been developed and implemented before October 1, 1992. The SWPPP must, among other requirements, identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm and non-storm water discharges from the facility and identify and implement site-specific best management practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges (Section A(2)). The SWPPP's BMPs must implement BAT and BCT (Section B(3)). The SWPPP must include: a description of individuals and their responsibilities for developing and implementing the SWPPP (Section A(3)); a site map showing the facility boundaries, storm water drainage areas with flow pattern and nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, impervious areas, areas of actual and potential pollutant contact, and areas of industrial activity (Section A(4)); a list of significant materials handled and stored at the site (Section A(5)); a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and particulate generating activities, and a description of significant spills and leaks, a list of all non-storm water discharges and their sources,

and a description of locations where soil erosion may occur (Section A(6)). The SWPPP must include an assessment of potential pollutant sources at the Facility and a description of the BMPs to be implemented at the Facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective (Section A(7), (8)). The SWPPP must be evaluated to ensure effectiveness and must be revised where necessary (Sections A(9), (10)).

20. Section C(11)(d) of the General Permit's Standard Provisions requires dischargers to report any noncompliance to the Regional Board. *See also* Section E(6). Section A(9) of the General Permit requires an annual evaluation of storm water controls including the preparation of an evaluation report and implementation of any additional measures in the SWPPP to respond to the monitoring results and other inspection activities.

21. The General Permit requires dischargers commencing industrial activities before October 1, 1992 to develop and implement an adequate written monitoring and reporting program no later than October 1, 1992. Existing facilities covered under the General Permit must implement all necessary revisions to their monitoring programs no later than August 1, 1997.

22. As part of their monitoring program, dischargers must identify all storm water discharge locations that produce a significant storm water discharge, evaluate

the effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control measures set out in the SWPPP are adequate and properly implemented.  Dischargers must conduct visual observations of these discharge locations for at least one storm per month during the wet season (October through May) and record their findings in their Annual Report.  Dischargers must also collect and analyze storm water samples from at least two storms per year.  Section B(5)(a) of the General Permit requires that dischargers "shall collect storm water samples during the first hour of discharge from (1) the first storm event of the wet season, and (2) at least one other storm event in the wet season.  All storm water discharge locations shall be sampled."  Section B(5)(c)(i) requires dischargers to sample and analyze during the wet season for basic parameters, such as pH, total suspended solids, electrical conductance, and total organic content or oil & grease, certain industry-specific parameters.  Section B(5)(c)(ii) requires dischargers to sample for toxic chemicals and other pollutants likely to be in the storm water discharged from the facility.  Section B(5)(c)(iii) requires discharges to sample for parameters dependent on a facility's standard industrial classification ("SIC") code.  Section B(7)(a) indicates that the visual observations and samples must represent the "quality and quantity of the facility's storm water discharges from the storm event."  Section B(7)(c) requires that "if visual observation and sample collection locations are difficult to observe or sample…facility operators shall identify and collect samples

from other locations that represent the quality and quantity of the facility's storm

water discharges from the storm event."

23.    The General Permit requires that facility operators "investigate the

facility to identify all non-storm water discharges and their sources.  As part of this

investigation, all drains (inlets and outlets) shall be evaluated to identify whether they

connect to the storm drain system.  All non-storm water discharges shall be described.

This shall include the source, quantity, frequency, and characteristics of the non-storm

water discharges and associated drainage area."  Section A(6)(a)(v).  The General

Permit authorizes certain non-storm water discharges providing that the non-storm

water discharges are in compliance with Regional Board requirements; that the non-

storm water discharges are in compliance with local agency ordinances and/or

requirements; that best management practices ("BMPs") are included in the Storm

Water Pollution Prevention Plan to (1) prevent or reduce the contact of non-storm

water discharges with significant materials or equipment and (2) minimize, to the

extent practicable, the flow or volume of non-storm water discharges; that the non-

storm water discharges do not contain significant quantities of pollutants; and that the

monitoring program includes quarterly visual observations of each non-storm water

discharge and its sources to ensure that BMPs are being implemented and are

effective (Special Conditions D).  Section B(3) of the General Permit requires

dischargers to conduct visual observations of all drainage areas for the presence of

non-storm water discharges, to observe the non-storm water discharges, and maintain records of such observations.

24.     Section B(14) of the General Permit requires dischargers to submit an annual report by July 1 of each year to the executive officer of the relevant Regional Board.  The annual report must be signed and certified by an appropriate corporate officer.  Sections B(14), C(9), (10).  Section A(9)(d) of the General Permit requires the discharger to include in their annual report an evaluation of their storm water controls, including certifying compliance with the General Permit.  *See also* Sections C(9), C(10) and B(14).

25.     The General Permit does not provide for any mixing zones by dischargers.  The General Permit does not provide for any dilution credits to be applied by dischargers.

26.     The Regional Board has identified beneficial uses of the Santa Ana River Watershed and established water quality standards for the river and its tributaries in "The Water Quality Control Plan (Basin Plan) for the Santa Ana River Basin" (hereinafter "Basin Plan").  See California Regional Water Quality Control Board, Santa Ana Region, The Water Quality Control Plan (Basin Plan) for the Santa Ana River Basin (2011), available at http://www.swrcb.ca.gov/rwqcb8/water_issues/programs/basin_plan/index.shtml.

27.     The beneficial uses of these waters include, among others, municipal and

domestic supply, agricultural supply, groundwater recharge, water contact recreation, non-contact water recreation, warm freshwater habitat, cold freshwater habitat, and wildlife habitat.  The non-contact water recreation use is defined as "[u]ses of water for recreational activities involving proximity to water, but not normally involving contact with water where water ingestion is reasonably possible."  Id. at 3-3.  These uses include, but are not limited to, picnicking, sunbathing, hiking, beachcombing, camping, boating, tidepool and marine life study, hunting, sightseeing, or aesthetic enjoyment in conjunction with the above activities."  Id.  Contact recreation use includes fishing and wading.  Id. at 3-2.  Visible pollution, including visible sheens and cloudy or muddy water from industrial areas, impairs people's use of the Santa Ana River for contact and non-contact water recreation.

28.    The Basin Plan includes a narrative toxicity standard which states that "[t]oxic substances shall not be discharged at levels that will bioaccumulate in aquatic resources to levels which are harmful to human health."  Id. at 4-18.  The Basin Plan includes a narrative oil and grease standard which states that "[w]aste discharges shall not result in deposition of oil, grease, wax, or other material in concentrations which result in a visible film or in coating objects in the water, or which cause a nuisance or adversely affect beneficial uses."  Id. at 4-15.  The Basin Plan includes a narrative suspended and settleable solids standard which states that "waters shall not contain suspended or settleable solids in amounts which cause a nuisance or adversely affect

beneficial uses . . . ."  Id. at 4-16.  The Basin Plan includes a narrative floatables standard which states that "[w]aste discharges shall not contain floating materials, including solids, liquids, foam or scum, which cause a nuisance or adversely affect beneficial uses."  Id. at 4-11.  The Basin Plan includes a narrative color standard which states that "[w]aste discharges shall not result in coloration of the receiving waters which causes a nuisance or adversely affect beneficial uses."  Id. at 4-10.  The Basin Plan includes a narrative turbidity standard which states that "inland surface waters . . . shall be free of changes in turbidity which adversely affect beneficial uses. Id. at 4-18.

29.    Moreover, the Basin Plan sets out a number of numeric water quality standards.  The Basin Plan includes Site Specific Objective standards (hereinafter "SSOs") of 0.0041 mg/L for lead.   Id. at 4-14.  The Basin Plan includes a pH standard of 6.5 – 8.5 standard units (hereinafter "s.u.").  Id. at 4-15.

30.    EPA has promulgated the California Toxics Rule (hereinafter "**CTR**"), establishing freshwater numeric water quality standards known as Criteria Maximum Concentration (hereinafter "**CMC**") for Lead of 0.065 mg/L (CMC).  40 C.F.R. § 131.38.

31.    The EPA has published benchmark levels as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT.  The following benchmarks have been established for pollutants

discharged by FILTER: Total Suspended Solids (TSS) – 100 mg/L, Oil & Grease (O&G) – 15 mg/L, pH 6-9 s.u., Chemical Oxygen Demand (COD) – 120 mg/L, Total Organic Carbon (TOC) – 110 mg/L, Iron (Fe) 1.0 mg/L, Lead (Pb) – 0.262 mg/L, Ammonia (NH$_3$) – 2.14 mg/L, and Magnesium (Mg) – 0.0636 mg/L.  U.S. Environmental Protection Agency, Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity (2009) 52, 102.

32.   Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements.  33 U.S.C. §§1365(a)(1) and (f), § 1362(5).  An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a).  Violators of the Act are also subject to an assessment of civil penalties of up to $32,500 per day per violation for all violations occurring through January 12, 2009, and $37,500 per day per violation for all violations occurring after January 12, 2009, pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365.  *See also* 40 C.F.R. §§ 19.1 - 19.4.

## V.   **STATEMENT OF FACTS**

33.   In its NOI, FILTER certified that the Facility is classified under SIC Code 4953 (hazardous waste, treatment, storage).  FILTER tracks, packages, transports, and disposes of hazardous waste.  Additionally, FILTER collects, transports and disposes of waste oil, oil filters, oily water and antifreeze.  On

information and belief, CCAEJ alleges that the Facility collects and discharges storm water from its industrial site into two or more storm drain outfalls located at the Facility.  CCAEJ is informed and believes that all storm water discharged from the site is associated with industrial activity or, alternatively, includes commingled storm water from both industrial and non-industrial activity.   The outfalls discharge into the San Bernardino County's municipal storm sewer system, which flows into the Santa Ana River.

34.     On information and belief, Plaintiff alleges that the management practices at the Facility do not prevent the sources of contamination described above from causing the discharge of pollutants to waters of the United States.

35.     Since at least October 14, 2009, FILTER has taken samples or arranged for samples to be taken of storm water discharges at the Facility.  The sample results were reported in the Facility's annual reports submitted to the Regional Board. FILTER certified each of those annual reports pursuant to Sections A and C of the General Permit.

36.     On information and belief, Plaintiff alleges that since at least October 14, 2009, the Facility has detected TSS, pH, O&G, COD, TOC, Cadmium, Lead, Iron, Ammonia, Magnesium and other pollutants in storm water discharged from the Facility.  Levels of pH, Cadmium and Lead have been outside of the parameters for water quality standards in violation of the Basin Plan, and discharges in the Facility's

storm water also have violated the narrative standards of the Basin Plan.  Levels of TSS, O&G, pH, Iron, Lead, COD, TOC, Magnesium and Ammonia detected in the Facility's storm water have been in excess of EPA's numeric parameter benchmark values.  ***These are extremely serious, repeated, orders of magnitude violations of the governing requirements***.

37.   The following discharges on the following dates contained concentrations of pollutants in excess of the numeric water quality standards established in the Basin Plan:

| Date | Parameter | Observed Concentration | Basin Plan or EPA Water Quality Standard/ EPA California Toxics Rule | Outfall (as identified by the Facility) |
|---|---|---|---|---|
| 1/25/2013 | Cadmium | 0.024 mg/L | 0.0017 mg/L | NORTH |
| 1/25/2013 | Cadmium | 0.037 mg/L | 0.0017 mg/L | SOUTH |
| 12/12/2011 | Cadmium | 0.013 mg/L | 0.0017 mg/L | SOUTH |
| 2/8/2013 | Lead | 0.245 mg/L | 0.0041 mg/L; 0.065 mg/L (CMC) | SOUTH |
| 1/25/2013 | Lead | 0.969 mg/L | 0.0041 mg/L; 0.065 mg/L (CMC) | SOUTH |
| 1/25/2013 | Lead | 1.42 mg/L | 0.0041 mg/L; 0.065 mg/L (CMC) | SOUTH |
| 12/12/2011 | Lead | 0.28 mg/L | 0.0041 mg/L; 0.065 mg/L (CMC) | SOUTH |

| | | | | |
|---|---|---|---|---|
| 9/30/2010 | Lead | .086 mg/L | 0.0041 mg/L; 0.065 mg/L (CMC) | NORTH |
| 2/8/2013 | pH | 6.35 s.u. | 6.5-8.5 s.u. | NORTH |
| 1/25/2013 | pH | 6.45 s.u. | 6.5-8.5 s.u. | SOUTH |
| 10/5/2011 | pH | 6.35 s.u. | 6.5-8.5 s.u. | NORTH |
| 9/30/2010 | pH | 5.98 s.u. | 6.5-8.5 s.u. | NORTH |
| 9/30/2010 | pH | 5.11 s.u. | 6.5-8.5 s.u. | SOUTH |
| 10/14/2009 | Narrative | Slight oil sheen | Oil & Grease.  Basin Plan at 4-15 | NORTH |
| 10/14/2009 | Narrative | Slight Oil sheen | Oil & Grease.  Basin Plan at 4-15 | SOUTH |
| 11/16/2009 | Narrative | Slight Oil Sheen | Oil & Grease.  Basin Plan at 4-15 | NORTH |
| 11/16/2009` | Narrative | Slight Oil Sheen | Oil & Grease.  Basin Plan at 4-15 | SOUTH |
| 10/1/2010 | Narrative | Slight Oil | Oil & Grease.  Basin Plan at 4-15 | NORTH |
| 10/1/2010 | Narrative | Slight Oil | Oil & Grease.  Basin Plan at 4-15 | SOUTH |
| 10/5/2011 | Narrative | Slight oil sheen, dirt | Oil & Grease.  Basin Plan at 4-15.  Solids. Basin Plan at 4-16. | NORTH |

| | | | | |
|---|---|---|---|---|
| 10/5/2011 | Narrative | Slight oil sheen, dirt | Oil & Grease.  Basin Plan at 4-15.  Solids. Basin Plan at 4-16. | SOUTH |
| 12/12/2011 | Narrative | Oil sheen, dirt | Oil & Grease.  Basin Plan at 4-15.  Solids. Basin Plan at 4-16. | NORTH |
| 12/12/2011 | Narrative | Oil sheen, dirt | Oil & Grease.  Basin Plan at 4-15.  Solids. Basin Plan at 4-16. | SOUTH |
| 2/15/2012 | Narrative | Oil sheen | Oil & Grease.  Basin Plan at 4-15 | NORTH |
| 2/15/2012 | Narrative | Oil sheen | Oil & Grease.  Basin Plan at 4-15 | SOUTH |
| 4/11/2012 | Narrative | Oil sheen | Oil & Grease.  Basin Plan at 4-15 | NORTH |
| 4/11/2012 | Narrative | Oil sheen | Oil & Grease.  Basin Plan at 4-15 | SOUTH |

The information in the above table reflects data gathered from FILTER's self-monitoring during the 2009-2010, 2010-2011, 2011-2012 and 2012-2013 wet seasons.

38.    Discharges on the following dates from the Facility contained concentrations of pollutants in excess of the numeric EPA water quality benchmarks: February 8, 2013, January 25, 2013, October 11, 2012, December 12, 2011, October 5, 2011, December 20, 2010, October 5, 2010, September 30, 2010 and January 26,

2010.  The information reflects data gathered from FILTER's self-monitoring during the 2009-2010, 2010-2011, 2011-2012, and 2012-2013 wet seasons.  ***These are extremely serious, repeated, orders of magnitude violations of the governing EPA benchmark values***.

39.    The level of TSS in storm water detected by the Facility has exceeded the benchmark value for TSS of 100 mg/L established by EPA.   For example, on February 8, 2013, 1440 mg/L was measured in outfall location South.

40.    The level of Iron in storm water detected by the Facility has exceeded the benchmark value of 1.0 mg/L established by EPA.  For example, on January 25, 2013, 515 mg/L Iron was measured in outfall location South.  ***This is 515 times higher than the EPA benchmark***.

41.    The level of O&G in storm water detected by the Facility has exceeded the benchmark value of 15.0 mg/L established by EPA.  For example, on September 30, 2010, 106.0 mg/L O&G was measured in outfall location north.

42.    The level of pH in storm water detected by the Facility has exceeded the benchmark value of 6-9 s.u. established by EPA.  For example, on September 30, 2010, 5.11 s.u. pH was measured in outfall location south.

43.    The level of Magnesium in storm water detected by the Facility has exceeded the benchmark value of 0.0636 mg/L established by EPA.  For example, on January 25, 2013, 121 mg/L Magnesium was measured in outfall location south.  ***This***

1   ***is nearly 2000 times higher than the EPA benchmark.***

2       44.     The level of Lead in storm water detected by the Facility has exceeded

3
    the benchmark value of 0.262 mg/L established by EPA.  For example, on January 25,
4

5   2013, 1.42 mg/L Lead was measured in outfall location south.

6       45.     The level of COD in storm water detected by the Facility has exceeded

7
    the benchmark value of 120 mg/L established by EPA.  For example, on December
8

9   12, 2011, 3330 mg/L COD was measured in outfall location south.  ***This is 25 times***

10  ***higher than the EPA benchmark.***

11

12      46.     The level of TOC in storm water detected by the Facility has exceeded

13  the benchmark value of 110 mg/L established by EPA.  For example, on December

14
    12, 2011, 530 mg/L TOC was measured in outfall location south.
15

16      47.     The level of Ammonia in storm water detected by the Facility has

17  exceeded the benchmark value of 2.14 mg/L established by EPA.  For example, on

18
    September 30, 2010, 9.13 mg/L Ammonia was measured in outfall location north.
19

20      48.     On information and belief, Plaintiff further alleges that FILTER's 2009-

21  2010 Annual Report indicated there was only one qualifying rain event to sample in
22
23  compliance with the Permit when in fact that was not the case.

24      49.     Facilities must also analyze their storm water samples for "[t]oxic
25
26  chemicals and other pollutants that are likely to be present in storm water discharges

27  in significant quantities."  General Permit at Section B(5)(c)(ii).  As evidenced by the

28

COMPLAINT                                           21

Facility's sampling results from the 2012-2013 wet season, CCAEJ alleges that iron is a pollutant likely to be present in the Facility's storm water discharges in significant quantities. CCAEJ's investigation of the FILTER monitoring data indicates that the Facility failed to analyze its storm water discharges for iron during all storm water samples taken during the 2009-2010, 2010-2011 and 2011-2012 wet seasons. This results in at least 12 violations of the General Permit.

50. On information and belief, Plaintiff alleges that since at least May 22, 2009, Defendants have not implemented BAT and BCT at the Facility for discharges of TSS, pH, O&G, COD, TOC, Cadmium, Lead, Iron, Ammonia, Magnesium and other pollutants. Section B(3) of the General Permit requires that Defendants implement BAT for toxic and nonconventional pollutants and BCT for conventional pollutants by no later than October 1, 1992. As of the date of this Complaint, the Facility has not implemented BAT and BCT.

51. On information and belief, Plaintiff alleges that since at least May 22, 2009, Defendants did not implement an adequate Storm Water Pollution Prevention Plan for the Facility. Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the Facility does not set forth site-specific best management practices for the Facility that are consistent with BAT or BCT for the Facility. Plaintiff is informed and believes, and thereupon alleges, that the SWPPP prepared for the Facility does not include an adequate assessment of potential pollutant sources,

structural pollutant control measures employed, a list of actual and potential areas of pollutant contact, or an adequate description of best management practices to be implemented at the Facility to reduce pollutant discharges.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP does not include each of the mandatory elements required by Section A of the General Permit.

52.   Information available to Plaintiff indicates that as a result of these practices, storm water containing excessive pollutants is being discharged during rain events from the Facility directly to the County of San Bernardino storm drain system, which discharges to the Santa Ana River.

53.   Plaintiff is informed and believes that Defendants did not submit to the Regional Board, since at least May 22, 2009, an annual report, that is signed and certified by the appropriate corporate officer, outlining the Facility's storm water controls and accurately certifying compliance with the General Permit Pursuant to Sections A(9)(d), B(14), and C(9), (10) of the General Permit.

54.   Information available to Plaintiff indicates that Defendants have not fulfilled the requirements set forth in the General Permit for discharges from the Facility due to the continued discharge of contaminated storm water.  Plaintiff is informed and believes, and thereupon alleges, that all of the violations alleged in this Complaint are ongoing and continuing.

## **CLAIMS FOR RELIEF**

1

## FIRST CAUSE OF ACTION
### Implement the Best Available and
### Best Conventional Treatment Technologies
### (Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)

55.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

56.     The General Permit's SWPPP requirements and Effluent Limitation B(3) require dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants.  Defendants have not implemented BAT and BCT at the Facility for discharges of TSS, pH, O&G, COD, TOC, Cadmium, Lead, Iron, Ammonia, Magnesium and other pollutants in violation of Effluent Limitation B(3) of the General Permit.

57.     Each day, since May 22, 2009, that Defendants did not develop and implement BAT and BCT in violation of the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

58.     Defendants have not complied with the BAT/BCT requirements every day since May 22, 2009.  Defendants continue to not comply with the BAT/BCT requirements each day that they fail to develop and fully implement BAT/BCT at the Facility.

## SECOND CAUSE OF ACTION
### Discharges of Contaminated Storm Water
### in Violation of Permit Conditions and the Act
### (Violations of 33 U.S.C. §§ 1311, 1342)

59.   Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

60.   Discharge Prohibition A(2) of the General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.  Receiving Water Limitations C(1) and C(2) of the General Permit require that storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

61.   Plaintiff is informed and believes, and thereupon alleges, that since at least May 22, 2009, Defendants have discharged polluted storm water from the Facility in excess of applicable water quality standards in violation of the Discharge Prohibition A(2) of the General Permit.

62.   Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are causing or contributing to the violation of the applicable water quality standards in a Statewide Water Quality Control Plan and/or the applicable Regional Board's Basin Plan in violation of Receiving Water Limitation C(2) of the General Permit.

63.   Plaintiff is informed and believes, and thereupon alleges, that these

discharges of contaminated storm water are adversely affecting human health and the environment in violation of Receiving Water Limitation C(1) of the General Permit.

64.     Every day, since at least May 22, 2009, that Defendants have discharged and continue to discharge polluted storm water from the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  These violations are ongoing and continuous.

### THIRD CAUSE OF ACTION
#### Prepare, Implement, Review, and Update
#### an Adequate Storm Water Pollution Prevention Plan
#### (Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)

65.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

66.     Section A and Provision E of the General Permit requires dischargers of storm water associated with industrial activity to develop and implement an adequate SWPPP no later than October 1, 1992.

67.     Defendants have not developed and implemented an adequate SWPPP for the Facility.

68.     Each day since May 22, 2009, that Defendants do not develop, implement and update an adequate SWPPP for the Facility is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).

69.     Defendants have been in violation of the SWPPP requirements every day since May 22, 2009.  Violation continues each day that an adequate SWPPP for the

Facility is not developed and fully implemented.

## FOURTH CAUSE OF ACTION
### Develop and Implement an
### Adequate Monitoring and Reporting Program
### (Violation of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)

70.    Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

71.    Section B of the General Permit requires dischargers of storm water associated with industrial activity to have developed and be implementing a monitoring and reporting program (including, *inter alia*, sampling and analysis of discharges) no later than October 1, 1992.

72.    Defendants have not developed and implemented an adequate monitoring and reporting program for the Facility.  Defendants' ongoing lack of an adequate monitoring and reporting program is evidenced by, *inter alia*, the Facility's failure to sample discharges from two rain events during the 2009-2010 wet season, failure to report visual observations from March 2010, January 2012 and March 2012 (claiming that there were no qualifying rain events when in fact there were numerous such events during these periods) and failing to analyze for Iron during the 2009-2010, 2010-2011 and 2011-2012 wet seasons.

73.    Each day since May 22, 2009, that Defendants did not develop and implement an adequate monitoring and reporting program for the Facility in violation of the General Permit is a separate and distinct violation of the General Permit and

Section 301(a) of the Act, 33 U.S.C. § 1311(a).  The absence of requisite monitoring and analytical results are ongoing and continuous.

## FIFTH CAUSE OF ACTION
### Certification of Compliance in Annual Report
### (Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)

74.     Plaintiff re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

75.     Defendants have not accurately certified compliance with the General Permit in each of the annual reports submitted to the Regional Board since at least May 22, 2009.

76.     Each day since at least May 22, 2009, that Defendants do not accurately certify compliance with the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).  Defendants continue to be in violation of the General Permit's certification requirement each day they maintain an inaccurate certification of its compliance with the General Permit.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.  Declare Defendants to have violated and to be in violation of the Act as alleged herein;

b.  Enjoin Defendants from discharging polluted storm water from the

Facility unless authorized by the Permit;

    c.  Enjoin Defendants from further violating the substantive and procedural requirements of the Permit;

    d.  Order Defendants to immediately implement storm water pollution control and treatment technologies and measures that are equivalent to BAT or BCT and prevent pollutants in the Facility's storm water from contributing to violations of any water quality standards;

    e.  Order Defendants to comply with the Permit's monitoring and reporting requirements, including ordering supplemental monitoring to compensate for past monitoring violations;

    f.  Order Defendants to prepare a SWPPP consistent with the Permit's requirements and implement procedures to regularly review and update the SWPPP;

    g.  Order Defendants to provide Plaintiff with reports documenting the quality and quantity of their discharges to waters of the United States and their efforts to comply with the Act and the Court's orders;

    h.  Order Defendants to pay civil penalties of $37,500 per day per violation for all violations pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 - 19.4;

    i.  Order Defendants to take appropriate actions to restore the quality of waters impaired or adversely affected by their activities;

COMPLAINT

j.   Award Plaintiff's costs (including reasonable investigative, attorney, witness, compliance oversight, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

k.   Award any such other and further relief, as this Court may deem appropriate.

Dated: ___8 / 8___, 2014          Respectfully submitted,

By: _____

Gideon Kracov
Attorneys for Plaintiff

COMPLAINT                                 30

**EXHIBIT A**

# GIDEON KRACOV

### Attorney at Law

801 South Grand Avenue
11th Floor
Los Angeles, California 90017

(213) 629-2071
Fax: (213) 623-7755

gk@gideonlaw.net
www.gideonlaw.net

May 22, 2014

## VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Jon L. Bennett, Owner
Wade Riddering, Regulatory Compliance
Filter Recycling Services Inc.
180 W Monte Ave.
Bloomington, CA 92316

Jon L. Bennett, Owner
Wade Riddering, Regulatory Compliance
Filter Recycling Services Inc.
2230 Riverside Av.
Bloomington, CA 92316

Jon L. Bennett, Agent for Service of Process
Wade Riddering, Regulatory Compliance
Filter Recycling Services Inc.
PO BOX 449
Colton, CA 92324

RE:   <u>Notice Of Violations And Intent To File Suit Under The Federal Water
Pollution Control Act Concerning Filter Recycling Services Inc., 180 W
Monte Ave., Bloomington, California, WDID No. 8 36I012307</u>

Dear Mr. Bennett and Mr. Riddering,

     The Law Office of Gideon Kracov on behalf of the Center for Community Action and
Environmental Justice (hereinafter "**CCAEJ**") is contacting you concerning Clean Water Act
(hereinafter "**CWA**" or "**Act**") violations at Filter Recycling Services Inc. facility at 180 W
Monte Ave., Bloomington, California (hereinafter "**Facility**"). This letter is being sent to you,
Jon L. Bennett and Wade Riddering, as the responsible owners, officers, or operators of the
Facility (collectively hereinafter "**Filter Recycling Services**").

     CCAEJ is a non-profit public benefit corporation dedicated to working with communities
to advocate for environmental justice and pollution prevention.  CCAEJ has members living in

the community adjacent to the Facility and the Santa Ana River Watershed.  CCAEJ and its members are deeply concerned with protecting the environment in and around their communities, including the Santa Ana River Watershed.

This letter addresses Filter Recycling Services' unlawful discharge of pollutants from the Facility through the municipal storm sewer system and into the Santa Ana River.  The Facility is discharging storm water pursuant to National Pollutant Discharge Elimination System (hereinafter "**NPDES**") Permit No. CA S000001, California State Water Resources Control Board (hereinafter "**State Board**") Order No. 92-12-DWQ as amended by Order No. 97-03-DWQ (hereinafter "**General Permit**").[1]  The WDID identification number for the Facility listed on documents submitted to the California Regional Water Quality Control Board, Santa Ana Region ("Regional Board") is 8 36I012307.  The Facility is engaged in ongoing violations of the substantive and procedural requirements of the General Permit.

Section 505(b) of the CWA requires a citizen to give notice of intent to file suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Act (33 U.S.C. § 1365(a)).  Notice must be given to the alleged violator, the U.S. Environmental Protection Agency (hereinafter "**EPA**"), and the State in which the violations occur.

As required by the Act, this Notice of Violation and Intent to File Suit provides notice of the violations that have occurred, and continue to occur, at the Facility.  Consequently, Filter Recycling Services is hereby placed on formal notice by CCAEJ that, after the expiration of sixty days from the date of this Notice of Violations and Intent to Sue, CCAEJ intends to file suit in federal court against Filter Recycling Services under Section 505(a) of the Clean Water Act (33 U.S.C. § 1365(a)), for violations of the CWA and General Permit.  These violations are described more extensively below.

## I.      BACKGROUND.

Filter Recycling Services filed a Notice of Intent to Comply With the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity (hereinafter "**NOI**") and that NOI can be viewed on the State of California's State Water Resources Control Board website.  In its NOI, Filter Recycling Services has certified that the Facility is classified under SIC Code 4953 (hazardous waste, treatment, and storage).  Filter Recycling Services tracks, packages, transports, and disposes of hazardous waste.  Additionally, Filter Recycling

---

[1] On April 1, 2014, the State Board reissued the General Permit, continuing its mandate that industrial facilities implement the best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") and, in addition, establishing numeric action levels mandating additional pollution control efforts.  State Board Order 2014-0057-DWQ.  The new permit, however, does not go into effect until July 1, 2015.  Until that time, the current General Permit remains in full force and effect.

collects, transports and disposes of waste oil, oil filters, oily water and antifreeze.  On information and belief, CCAEJ alleges that the Facility collects and discharges storm water from its industrial site into two or more storm drain outfalls located at the Facility.  CCAEJ is informed and believes that all storm water discharged from the site is associated with industrial activity or, alternatively, includes commingled storm water from both industrial and non-industrial activity.  The outfalls discharge into the San Bernardino County's municipal storm sewer system, which flows into the Santa Ana River.

The Regional Board has identified beneficial uses of the Santa Ana River Watershed and established water quality standards for the river and its tributaries in "The Water Quality Control Plan (Basin Plan) for the Santa Ana River Basin" (hereinafter "**Basin Plan**").  *See* California Regional Water Quality Control Board, Santa Ana Region, The Water Quality Control Plan (Basin Plan) for the Santa Ana River Basin (2011), *available at* http://www.swrcb.ca.gov/ rwqcb8/water_issues/programs/basin_plan/index.shtml.

The beneficial uses of these waters include, among others, municipal and domestic supply, agricultural supply, groundwater recharge, water contact recreation, non-contact water recreation, warm freshwater habitat, cold freshwater habitat, and wildlife habitat.  The non-contact water recreation use is defined as "[u]ses of water for recreational activities involving proximity to water, but not normally involving contact with water where water ingestion is reasonably possible." *Id.* at 3-3.  These uses include, but are not limited to, picnicking, sunbathing, hiking, beachcombing, camping, boating, tidepool and marine life study, hunting, sightseeing, or aesthetic enjoyment in conjunction with the above activities." *Id.*  Contact recreation use includes fishing and wading. *Id.* at 3-2.  Visible pollution, including visible sheens and cloudy or muddy water from industrial areas, impairs people's use of the Santa Ana River for contact and non-contact water recreation.

The Basin Plan includes a narrative toxicity standard which states that "[t]oxic substances shall not be discharged at levels that will bioaccumulate in aquatic resources to levels which are harmful to human health." *Id.* at 4-18.  The Basin Plan includes a narrative oil and grease standard which states that "[w]aste discharges shall not result in deposition of oil, grease, wax, or other material in concentrations which result in a visible film or in coating objects in the water, or which cause a nuisance or adversely affect beneficial uses." *Id.* at 4-15.  The Basin Plan includes a narrative suspended and settleable solids standard which states that "waters shall not contain suspended or settleable solids in amounts which cause a nuisance or adversely affect beneficial uses . . . ." *Id.* at 4-16.  The Basin Plan includes a narrative floatables standard which states that "[w]aste discharges shall not contain floating materials, including solids, liquids, foam or scum, which cause a nuisance or adversely affect beneficial uses." *Id.* at 4-11.  The Basin Plan includes a narrative color standard which states that "[w]aste discharges shall not result in coloration of the receiving waters which causes a nuisance or adversely affect beneficial uses."

*Id.* at 4-10.  The Basin Plan includes a narrative turbidity standard which states that "inland surface waters . . . shall be free of changes in turbidity which adversely affect beneficial uses. *Id.* at 4-18.

Moreover, the Basin Plan sets out a number of numeric water quality standards.  The Basin Plan includes Site Specific Objective standards (hereinafter "**SSOs**") of 0.0017 mg/L for cadmium, 0.0182 mg/L for copper, and 0.0041 mg/L for lead.[2]  *Id.* at 4-14.  The Basin Plan includes a pH standard of 6.5 – 8.5 standard units (hereinafter "**s.u.**").  *Id.* at 4-15.  The Basin Plan also includes a Nitrate standard of 10 mg/L.  *Id.* at 4-14.

EPA has promulgated the California Toxics Rule (hereinafter "**CTR**"), establishing freshwater numeric water quality standards known as Criteria Maximum Concentration (hereinafter "**CMC**") for Lead of 0.065 mg/L (CMC).  40 C.F.R. § 131.38.[3]

The EPA has published benchmark levels as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite best available technology economically achievable (hereinafter "**BAT**") and best conventional pollutant control technology (hereinafter "**BCT**").  The following benchmarks have been established for pollutants discharged by Filter Recycling Services: Total Suspended Solids (TSS) – 100 mg/L, Oil & Grease (O&G) – 15 mg/L, pH 6-9 s.u., Chemical Oxygen Demand (COD) – 120 mg/L, Total Organic Carbon (TOC) – 110 mg/L, Iron (Fe) 1.0 mg/L, Lead (Pb) – 0.262 mg/L, Ammonia ($NH_3$) – 2.14 mg/L, and Magnesium (Mg) – 0.0636 mg/L.[4] U.S. Environmental Protection Agency, Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity (2009) 52, 102.

## II.   ALLEGED VIOLATIONS OF THE NPDES PERMIT.

### a.   Discharges In Violation Of The Permit Not Subjected To BAT/BCT.

Filter Recycling Services has violated and continues to violate the terms and conditions of the General Permit.  Section 402(p) of the Act prohibits the discharge of storm water associated with industrial activities, except as permitted under an NPDES permit (33 U.S.C. § 1342) such as the General Permit.  The General Permit prohibits any discharges of storm water associated with industrial activities or authorized non-storm water discharges that have not been subjected to BAT or BCT.  Effluent Limitation B(3) of the General Permit requires dischargers

---

[2] The values for cadmium, copper and lead are expressed as a function of total hardness (mg/L) in the water body and correspond to a total hardness of 200 mg/L as $CaCO_3$.

[3] The values for Zinc are expressed as a function of total hardness (mg/L) in the water body and correspond to a total hardness of 100 mg/L as $CaCO_3$.

[4] The value for Lead is expressed as a function of total hardness (mg/L) in the water body and correspond to a total hardness of 250+ mg/L as $CaCO_3$.

to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants. BAT and BCT include both nonstructural and structural measures. General Permit, Section A(8). Conventional pollutants are Total Suspended Solids, Oil and Grease, pH, Biochemical Oxygen Demand, and Fecal Coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. *Id.* §§ 401.15, 401.16.

In addition, Discharge Prohibition A(1) of the General Permit prohibits the discharge of materials other than storm water (defined as non-storm water discharges) that discharge either directly or indirectly to waters of the United States. Discharge Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.

Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges and authorized non-storm water discharges to surface or groundwater that adversely impact human health or the environment. Receiving Water Limitation C(2) of the General Permit also prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan. The General Permit does not authorize the application of any mixing zones for complying with Receiving Water Limitation C(2). As a result, compliance with this provision is measured at the Facility's discharge monitoring locations.

Filter Recycling Services has discharged and continues to discharge storm water with unacceptable levels of TSS, pH, O&G, COD, TOC, Cadmium, Lead, Iron, Ammonia, Magnesium and other pollutants in violation of the General Permit. Filter Recycling Services' sampling and analysis results reported to the Regional Board confirm discharges of specific pollutants and materials other than storm water in violation of the Permit provisions listed above. Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

The following discharges of pollutants from the Facility contained concentrations of pollutants in excess of numeric water quality standards established in the Basin Plan or the CTR, evidencing past and ongoing violations of General Permit Discharge Prohibitions A(1) and A(2), Effluent Limitation B(3) and Receiving Water Limitations C(1) and C(2).

| Date | Parameter | Observed Concentration | Basin Plan or EPA Water Quality Standard/ EPA California Toxics Rule | Outfall (as identified by the Facility) |
|------|-----------|------------------------|----------------------------------------------------------------------|------------------------------------------|
| 1/25/2013 | Cadmium | 0.024 mg/L | 0.0017 mg/L | NORTH |

Filter Recycling Services– Clean Water Act Notice of Violations & Intent to File Suit
May 22, 2014
Page **6** of **16**

| 1/25/2013 | Cadmium | 0.037 mg/L | 0.0017 mg/L | SOUTH |
|---|---|---|---|---|
| 12/12/2011 | Cadmium | 0.013 mg/L | 0.0017 mg/L | SOUTH |
| 2/8/2013 | Lead | 0.245 mg/L | 0.0041 mg/L; 0.065 mg/L (CMC) | SOUTH |
| 1/25/2013 | Lead | 0.969 mg/L | 0.0041 mg/L; 0.065 mg/L (CMC) | SOUTH |
| 1/25/2013 | Lead | 1.42 mg/L | 0.0041 mg/L; 0.065 mg/L (CMC) | SOUTH |
| 12/12/2011 | Lead | 0.28 mg/L | 0.0041 mg/L; 0.065 mg/L (CMC) | SOUTH |
| 9/30/2010 | Lead | .086 mg/L | 0.0041 mg/L; 0.065 mg/L (CMC) | NORTH |
| 2/8/2013 | pH | 6.35 s.u. | 6.5-8.5 s.u. | NORTH |
| 1/25/2013 | pH | 6.45 s.u. | 6.5-8.5 s.u. | SOUTH |
| 10/5/2011 | pH | 6.35 s.u. | 6.5-8.5 s.u. | NORTH |
| 9/30/2010 | pH | 5.98 s.u. | 6.5-8.5 s.u. | NORTH |
| 9/30/2010 | pH | 5.11 s.u. | 6.5-8.5 s.u. | SOUTH |
| 10/14/2009 | Narrative | Slight oil sheen | Oil & Grease.  Basin Plan at 4-15 | NORTH |
| 10/14/2009 | Narrative | Slight Oil sheen | Oil & Grease.  Basin Plan at 4-15 | SOUTH |
| 11/16/2009 | Narrative | Slight Oil Sheen | Oil & Grease.  Basin Plan at 4-15 | NORTH |
| 11/16/2009` | Narrative | Slight Oil Sheen | Oil & Grease.  Basin Plan at 4-15 | SOUTH |
| 10/1/2010 | Narrative | Slight Oil | Oil & Grease.  Basin Plan at 4-15 | NORTH |
| 10/1/2010 | Narrative | Slight Oil | Oil & Grease.  Basin Plan at 4-15 | SOUTH |
| 10/5/2011 | Narrative | Slight oil sheen, dirt | Oil & Grease.  Basin Plan at 4-15.  Solids. Basin Plan at 4-16. | NORTH |

Filter Recycling Services– Clean Water Act Notice of Violations & Intent to File Suit
May 22, 2014
Page **7** of **16**

| | | | | |
|---|---|---|---|---|
| 10/5/2011 | Narrative | Slight oil sheen, dirt | Oil & Grease. Basin Plan at 4-15. Solids. Basin Plan at 4-16. | SOUTH |
| 12/12/2011 | Narrative | Oil sheen, dirt | Oil & Grease. Basin Plan at 4-15. Solids. Basin Plan at 4-16. | NORTH |
| 12/12/2011 | Narrative | Oil sheen, dirt | Oil & Grease. Basin Plan at 4-15. Solids. Basin Plan at 4-16. | SOUTH |
| 2/15/2012 | Narrative | Oil sheen | Oil & Grease. Basin Plan at 4-15 | NORTH |
| 2/15/2012 | Narrative | Oil sheen | Oil & Grease. Basin Plan at 4-15 | SOUTH |
| 4/11/2012 | Narrative | Oil sheen | Oil & Grease. Basin Plan at 4-15 | NORTH |
| 4/11/2012 | Narrative | Oil sheen | Oil & Grease. Basin Plan at 4-15 | SOUTH |

The information in the above table reflects data gathered from Filter Recycling Services self-monitoring during the 2009-2010, 2010-2011, 2011-2012 and 2012-2013 wet seasons. CCAEJ alleges that during each of these wet seasons and continuing through today, Filter Recycling Services has discharged storm water contaminated with pollutants at levels or observations that exceed or violate one or more applicable water quality standards, including, but not limited to, each of the following:

- pH – 6.5-8.5 s.u, Basin Plan at 4-15;

- Cadmium – 0.0017 mg/L, *id.* at 4-14;

- Lead – 0.0041 mg/L, Basin Plan at 4-14;

- Lead – 0.065 mg/L (CMC), 40 C.F.R. § 131.38;

- Narrative standard for oil and grease, Basin Plan at 4-15.

The following discharges of pollutants from the Facility contained concentrations of pollutants in excess of numeric water quality benchmarks established by EPA in the MGSP (**"EPA Benchmarks"**), evidencing past and ongoing violations of General Permit Discharge Prohibitions A(1) and A(2), Effluent Limitation B(3) and Receiving Water Limitations C(1) and C(2).

Filter Recycling Services– Clean Water Act Notice of Violations & Intent to File Suit
May 22, 2014
Page **8** of **16**

| Date | Parameter | Observed Concentration | EPA Benchmarks | Location (as identified by the Facility) |
|---|---|---|---|---|
| 2/8/2013 | TSS | 1440 mg/L | 100 mg/L | SOUTH |
| 1/25/2013 | TSS | 1030 mg/L | 100 mg/L | NORTH |
| 1/25/2013 | TSS | 820 mg/L | 100 mg/L | SOUTH |
| 12/12/2011 | TSS | 289 mg/L | 100 mg/L | NORTH |
| 12/12/2011 | TSS | 1010 mg/L | 100 mg/L | SOUTH |
| 10/5/2011 | TSS | 109 mg/L | 100 mg/L | SOUTH |
| 12/20/2010 | TSS | 213 mg/L | 100 mg/L | NORTH |
| 10/5/2010 | TSS | 183 mg/L | 100 mg/L | NORTH |
| 9/30/2010 | TSS | 549 mg/L | 100 mg/L | NORTH |
| 9/30/2010 | TSS | 406 mg/L | 100 mg/L | SOUTH |
| 1/26/2010 | TSS | 175 mg/L | 100 mg/L | SOUTH |
| 1/26/2010 | TSS | 155 mg/L | 100 mg/L | NORTH |
| 1/25/2013 | Oil & Grease | 79.6 mg/L | 15 mg/L | NORTH |
| 12/12/2011 | Oil & Grease | 16.9 mg/L | 15 mg/L | SOUTH |
| 9/30/2010 | Oil & Grease | 18 mg/L | 15 mg/L | SOUTH |
| 9/30/2010 | Oil & Grease | 106 mg/L | 15 mg/L | NORTH |
| 10/11/2012 | Oil & Grease | 15.1 mg/L | 15 mg/L | SOUTH |
| 9/30/2010 | pH | 5.98 mg/L | 6-9 s.u. | NORTH |
| 9/30/2010 | pH | 5.11 mg/L | 6-9 s.u. | SOUTH |
| 2/8/2013 | Iron | 3.37 mg/L | 1.0 mg/L | NORTH |
| 2/8/2013 | Iron | 12.1 mg/L | 1.0 mg/L | SOUTH |
| 1/25/2013 | Iron | 265 mg/L | 1.0 mg/L | NORTH |
| 1/25/2013 | Iron | 515 mg/L | 1.0 mg/L | SOUTH |
| 1/25/2013 | Lead | 0.969 mg/L | 0.262 mg/L | NORTH |
| 1/25/2013 | Lead | 1.42 mg/L | 0.262 mg/L | SOUTH |
| 12/12/2011 | Lead | 0.28 mg/L | 0.262 mg/L | SOUTH |
| 2/8/2013 | Chemical Oxygen Demand | 457 mg/L | 120 mg/L | NORTH |
| 2/8/2013 | Chemical Oxygen Demand | 1090 mg/L | 120 mg/L | SOUTH |
| 1/25/2013 | Chemical Oxygen Demand | 908 mg/L | 120 mg/L | NORTH |
| 1/25/2013 | Chemical Oxygen Demand | 773 mg/L | 120 mg/L | SOUTH |
| 12/12/2011 | Chemical Oxygen | 2020 mg/L | 120 mg/L | NORTH |

Filter Recycling Services– Clean Water Act Notice of Violations & Intent to File Suit
May 22, 2014
Page **9** of **16**

| | Demand | | | |
|---|---|---|---|---|
| 12/12/2011 | Chemical Oxygen Demand | 3330 mg/L | 120 mg/L | SOUTH |
| 10/5/2011 | Chemical Oxygen Demand | 1000 mg/L | 120 mg/L | NORTH |
| 10/5/2011 | Chemical Oxygen Demand | 1190 mg/L | 120 mg/L | SOUTH |
| 9/30/2010 | Chemical Oxygen Demand | 380 mg/L | 120 mg/L | NORTH |
| 12/20/2010 | Chemical Oxygen Demand | 325 mg/L | 120 mg/L | SOUTH |
| 10/5/2010 | Chemical Oxygen Demand | 995 mg/L | 120 mg/L | NORTH |
| 10/5/2010 | Chemical Oxygen Demand | 152 mg/L | 120 mg/L | SOUTH |
| 9/30/2010 | Chemical Oxygen Demand | 1430 mg/L | 120 mg/L | NORTH |
| 9/30/2010 | Chemical Oxygen Demand | 1060 mg/L | 120 mg/L | SOUTH |
| 1/26/2010 | Chemical Oxygen Demand | 288 mg/L | 120 mg/L | SOUTH |
| 1/26/2010 | Chemical Oxygen Demand | 179 mg/L | 120 mg/L | NORTH |
| 12/12/2011 | Total Organic Carbon | 200 mg/L | 110 mg/L | NORTH |
| 12/12/2011 | Total Organic Carbon | 530 mg/L | 110 mg/L | SOUTH |
| 10/5/2011 | Total Organic Carbon | 234 mg/L | 110 mg/L | NORTH |
| 10/5/2011 | Total Organic Carbon | 318 mg/L | 110 mg/L | SOUTH |
| 10/5/2010 | Total Organic Carbon | 330 mg/L | 110 mg/L | NORTH |
| 9/30/2010 | Total Organic Carbon | 220 mg/L | 110 mg/L | NORTH |
| 9/30/2010 | Total Organic Carbon | 175 mg/L | 110 mg/L | SOUTH |
| 2/8/2013 | Magnesium | 1.42 mg/L | 0.0636 mg/L | NORTH |
| 2/8/2013 | Magnesium | 6.21 mg/L | 0.0636 mg/L | SOUTH |
| 1/25/2013 | Magnesium | 63 mg/L | 0.0636 mg/L | NORTH |
| 1/25/2013 | Magnesium | 121 mg/L | 0.0636 mg/L | SOUTH |
| 12/12/2011 | Magnesium | 7.25 mg/L | 0.0636 mg/L | NORTH |
| 12/12/2011 | Magnesium | 34.7 mg/L | 0.0636 mg/L | SOUTH |
| 10/5/2011 | Magnesium | 17 mg/L | 0.0636 mg/L | NORTH |
| 10/5/2011 | Magnesium | 11.1 mg/L | 0.0636 mg/L | SOUTH |

Filter Recycling Services– Clean Water Act Notice of Violations & Intent to File Suit
May 22, 2014
Page **10** of **16**

| 12/20/2010 | Magnesium | 3.6 mg/L | 0.0636 mg/L | NORTH |
|---|---|---|---|---|
| 12/20/2010 | Magnesium | 3.79 mg/L | 0.0636 mg/L | SOUTH |
| 10/5/2010 | Magnesium | 29.7 mg/L | 0.0636 mg/L | NORTH |
| 10/5/2010 | Magnesium | 2.75 mg/L | 0.0636 mg/L | SOUTH |
| 9/30/2010 | Magnesium | 8.26 mg/L | 0.0636 mg/L | NORTH |
| 9/30/2010 | Magnesium | 4 mg/L | 0.0636 mg/L | SOUTH |
| 1/26/2010 | Magnesium | 5.98 mg/L | 0.0636 mg/L | SOUTH |
| 1/26/2010 | Magnesium | 1.16 mg/L | 0.0636 mg/L | NORTH |
| 10/5/2010 | Ammonia | 7.47 mg/L | 2.14 mg/L | NORTH |
| 10/5/2010 | Ammonia | 2.76 mg/L | 2.14 mg/L | SOUTH |
| 9/30/2010 | Ammonia | 9.13 mg/L | 2.14 mg/L | NORTH |
| 9/30/2010 | Ammonia | 3.86 mg/L | 2.14 mg/L | SOUTH |

The information in the above table reflects data gathered from Filter Recycling Services self-monitoring during the 2009-2010, 2010-2011, 2011-2012 and 2012-2013 wet seasons. CCAEJ alleges that during each of those rainy seasons and continuing through today, Filter Recycling Services has discharged storm water contaminated with pollutants that exceed one or more applicable EPA Benchmarks, including, but not limited to, each of the following:

- Total Suspended Solids – 100 mg/L;

- Oil & Grease – 15 mg/L;

- pH – 6-9 s.u.;

- Iron – 1.0 mg/L;

- Lead – 0.262 mg/L;

- Chemical Oxygen Demand – 120 mg/L;

- Total Organic Carbon – 110 mg/L;

- Ammonia – 2.14 mg/L; and

- Magnesium – 0.0636 mg/L.

CCAEJ's investigation, including its review of Filter Recycling Services analytical results documenting pollutant levels in the Facility's storm water discharges well in excess of applicable water quality standards and the EPA's benchmark values, indicate that Filter Recycling Services has not implemented BAT and BCT at the facility for its discharges of TSS, pH, O&G, COD, TOC, Cadmium, Lead, Iron, Ammonia, Magnesium and other pollutants in

violation of Effluent Limitation B(3) of the General Permit. Filter Recycling Services was required to have implemented BAT and BCT by no later than October 1, 1992, or since the date the Facility opened. Thus, Filter Recycling Services is discharging polluted storm water associated with its industrial operations without having implemented BAT and BCT.

In addition, the numbers listed in the table above indicate that the Facility is discharging polluted storm water in violation of Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) of the General Permit. CCAEJ alleges that such violations also have occurred and will occur on other rain dates, including every significant rain event that has occurred since at least May 22, 2009 and that will occur at the Facility subsequent to the date of this Notice of Violation and Intent to File Suit. Attachment A, attached hereto, sets forth each of the specific rain dates on which CCAEJ alleges that Filter Recycling Services has discharged storm water containing impermissible levels of TSS, pH, O&G, COD, TOC, Cadmium, Lead, Iron, Ammonia, Magnesium and other pollutants in violation of Effluent Limitation B(3), Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) of the General Permit.[5]

These unlawful discharges from the Facility are ongoing. Each discharge of storm water containing any of these pollutants constitutes a separate violation of the General Permit and the Act. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the CWA, Filter Recycling Services is subject to penalties for violations of the General Permit and the Act since May 22, 2009.

**b.** **Failure To Develop And Implement An Adequate Monitoring And Reporting Program.**

Section B of the General Permit describes the monitoring requirements for storm water and non-storm water discharges. Facilities are required to make monthly visual observations of storm water discharges (Section B(4)) and quarterly visual observations of both unauthorized and authorized non-storm water discharges (Section B(3)). Section B(5) requires facility operators to sample and analyze at least two storm water discharges from all storm water discharge locations during each wet season. Section B(7) requires that the visual observations and samples must represent the "quality and quantity of the facility's storm water discharges from the storm event."

The above-referenced data was obtained from the Facility's monitoring program as reported in its Annual Reports submitted to the Regional Board. This data is evidence that the Facility has violated various Discharge Prohibitions, Receiving Water Limitations, and Effluent Limitations in the General Permit. To the extent the storm water data collected by Filter

---

[5] The rain dates are all the days when an average of 0.1 or more rain fell as measured by a weather station located in Ontario ten miles away. *See* http://www.ipm.ucdavis.edu/WEATHER/SITES/.

Recycling Services is not representative of the quality of the Facility's various storm water discharges and that the Facility failed to monitor all qualifying storm water discharges, CCAEJ alleges that the Facility's monitoring program violates Sections B(3), (4), (5) and (7) of the General Permit.

CCAEJ also alleges on information and belief that Filter Recycling Services' 2009-2010 Annual Report indicated there was only one qualifying rain event to sample in compliance with the Permit when in fact that was not the case.

CCAEJ also alleges on information and belief that Filter Recycling Services failed to report visual observations in its Annual Reports for March 2010, January 2012 and March 2012, by claiming that there were no qualifying rain events when in fact there were numerous such events during these periods.

The above violations are ongoing. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Filter Recycling Services is subject to penalties for violations of the General Permit and the Act's monitoring and sampling requirements since May 22, 2009.

### c.   Failure To Analyze For Mandatory Parameters.

With some limited adjustments, facilities covered by the General Permit must sample two storm events per season from each of their storm water discharge locations. General Permit Section B(5)(a). Collected samples must be analyzed for Total Suspended Solids, pH, Specific Conductance and either Total Organic Carbon or O&G. *Id.* at Section B(5)(c)(i). Facilities must also analyze their storm water samples for "[t]oxic chemicals and other pollutants that are likely to be present in storm water discharges in significant quantities.". *Id.* at Section B(5)(c)(ii).

As evidenced by the Facility's sampling results from the 2012-2013 wet season, CCAEJ alleges that iron is a pollutant likely to be present in the Facility's storm water discharges in significant quantities. CCAEJ's investigation of the Filter Recycling Services monitoring data indicates that the Facility failed to analyze its storm water discharges for iron during all storm water samples taken during the 2009-2010, 2010-2011 and 2011-2012 wet seasons. This results in at least 12 violations of the General Permit.

Each failure to analyze for mandatory parameters constitutes a separate violation of the General Permit and the Act. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the CWA, Cal Micro is subject to penalties for violations of the General Permit and the Act since May 22, 2009.

### d.   Failure To Prepare, Implement, Review and Update An Adequate Storm Water Pollution Prevention Plan.

Section A and Provision E(2) of the General Industrial Storm Water Permit require dischargers of storm water associated with industrial activity to develop, implement, and update an adequate storm water pollution prevention plan (hereinafter "**SWPPP**") no later than October 1, 1992. Section A(1) and Provision E(2) requires dischargers who submitted an NOI pursuant to the General Permit to continue following their existing SWPPP and implement any necessary revisions to their SWPPP in a timely manner, but in any case, no later than August 1, 1997.

The SWPPP must, among other requirements, identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm and non-storm water discharges from the facility and identify and implement site-specific best management practices (hereinafter "**BMPs**") to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges (General Permit, Section A(2)). The SWPPP must include BMPs that achieve BAT and BCT (Effluent Limitation B(3)). The SWPPP must include: a description of individuals and their responsibilities for developing and implementing the SWPPP (General Permit, Section A(3)); a site map showing the facility boundaries, storm water drainage areas with flow pattern and nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, impervious areas, areas of actual and potential pollutant contact, and areas of industrial activity (General Permit, Section A(4)); a list of significant materials handled and stored at the site (General Permit, Section A(5)); a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and particulate generating activities, a description of significant spills and leaks, a list of all non-storm water discharges and their sources, and a description of locations where soil erosion may occur (General Permit, Section A(6)).

The SWPPP also must include an assessment of potential pollutant sources at the Facility and a description of the BMPs to be implemented at the Facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective (General Permit, Section A(7), (8)). The SWPPP must be evaluated to ensure effectiveness and must be revised where necessary (General Permit, Section A(9),(10)). The SWPPP must also include a certification statement and signature (General Permit, Section C(10)).

CCAEJ's investigation of the conditions at the Facility as well as Filter Recycling Services' Annual Reports indicates that Filter Recycling Services has been operating with an inadequately developed SWPPP in violation of the requirements set forth above. Filter Recycling Services has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary. Filter Recycling Services has been in continuous violation of Section A and Provision E(2) of the General Permit every day since May 22, 2009, at the very latest, and will continue to be in violation every day that Filter Recycling Services fails to prepare, implement,

review, and update an effective SWPPP. Filter Recycling Services is subject to penalties for violations of the Order and the Act occurring since May 22, 2009.

      e.    **Failure To File True And Correct Annual Reports**.

      Section B(14) of the General Industrial Storm Water Permit requires dischargers to submit an Annual Report by July 1st of each year to the executive officer of the relevant Regional Board. The Annual Report must be signed and certified by an appropriate corporate officer. General Permit, Sections B(14), C(9), C(10). Section A(9)(d) of the General Industrial Storm Water Permit requires the discharger to include in their annual report an evaluation of their storm water controls, including certifying compliance with the General Industrial Storm Water Permit. *See also* General Permit, Sections C(9) and (10) and B(14).

      During the 2009-2010, 2010-2011, 2011-2012 and 2012-2013 wet seasons, Filter Recycling Services inaccurately certified in the Annual Report that the facility was in compliance with the General Permit. Consequently, Filter Recycling Services has violated Sections A(9)(d), B(14), C(9) and C(10) of the General Industrial Storm Water Permit every time Filter Recycling Services failed to submit a complete or correct report and every time Filter Recycling Services or its agents failed to comply with the Act. Filter Recycling Services is subject to penalties for violations of Section (C) of the General Industrial Storm Water Permit and the Act occurring since at least July 5, 2010.

**III.**    **Persons Responsible For the Violations**.

      CCAEJ puts Filter Recycling Services, Jon L. Bennett and Wade Riddering on notice that they are the persons responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, CCAEJ puts Filter Recycling Services, Jon L. Bennett and Wade Riddering on notice that it intends to include those persons in this action.

**IV.**    **Name And Address Of Noticing Parties**.

      The name, address and telephone number of CCAEJ is as follows:

      Penny Newman
      Executive Director
      Center for Community Action and Environmental Justice
      P.O. Box 33124
      Jurupa Valley, CA 92519
      Tel. (951) 360-8451

**V.**    **Counsel**.

CCAEJ has retained counsel to represent it in this matter.  Please direct all communications to:

Gideon Kracov
The Law Office of Gideon Kracov
801 South Grand Avenue
11th Floor
Los Angeles, California 90017
Tel: (213) 629-2071
E-Mail: gk@gideonlaw.net

Michael R. Lozeau
Douglas J. Chermak
Lozeau Drury LLP
410 12th Street
Suite 250
Oakland, California 94607
Tel: (510) 836-4200
E-Mail: michael@lozeaudrury.com
E-Mail: doug@lozeaudrury.com

### VI.  Penalties.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation (40 C.F.R. § 19.4) each separate violation of the Act subjects Filter Recycling Services to a penalty of up to $37,500 per day per violation.  In addition to civil penalties, CCAEJ will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law.  Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)), permits prevailing parties to recover costs and fees, including attorneys' fees.

CCAEJ believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit.  CCAEJ intends to file a citizen suit under Section 505(a) of the Act against Filter Recycling Services and its agents for the above-referenced violations upon the expiration of the 60-day notice period.  However, during the 60-day notice period, CCAEJ would be willing to discuss effective remedies for the violations noted in this letter.  If you wish to pursue such discussions in the absence of litigation, CCAEJ suggests that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period.  CCAEJ does not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

Gideon Kracov
The Law Office of Gideon Kracov

Filter Recycling Services– Clean Water Act Notice of Violations & Intent to File Suit
May 22, 2014
Page **16** of **16**

Attorneys for Center for Community Action and
Environmental Justice

## SERVICE LIST

Gina McCarthy, Administrator
U.S. Environmental Protection Agency
12000 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

Thomas Howard, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Eric Holder, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Citizen Suit Coordinator
Environment and Natural Resources Division
Law and Policy Section
P.O. Box 7415
Ben Franklin Station
Washington, DC 20044-7415

Jared Blumenfeld, Regional Administrator
U.S. EPA – Region 9
75 Hawthorne Street
San Francisco, CA 94105

Kurt V. Berchtold, Executive Officer
Santa Ana Regional Water Quality Control Board
3737 Main Street
Suite 500
Riverside, CA 92501-3348

*Served via Certified Mail, Return Receipt Requested.

**ATTACHMENT A**

Rain Dates, Filter Recycling Services, Bloomington, California

| | | |
|---|---|---|
| 11/30/2009 | 12/6/2009 | 12/7/2009 |
| 12/16/2009 | 12/29/2009 | 1/3/2010 |
| 1/4/2010 | 1/5/2010 | 1/7/2010 |
| 1/9/2010 | 1/10/2010 | 2/7/2010 |
| 2/8/2010 | 2/12/2010 | 2/14/2010 |
| 2/17/2010 | 2/19/2010 | 2/20/2010 |
| 2/21/2010 | 2/22/2010 | 2/23/2010 |
| 2/25/2010 | 2/27/2010 | 2/28/2010 |
| 3/1/2010 | 3/2/2010 | 3/5/2010 |
| 3/15/2010 | 3/17/2010 | 11/30/2010 |
| 12/6/2010 | 12/7/2010 | 12/16/2010 |
| 1/3/2011 | 1/4/2011 | 1/5/2011 |
| 1/7/2011 | 1/9/2011 | 1/10/2011 |
| 2/7/2011 | 2/8/2011 | 2/12/2011 |
| 2/14/2011 | 2/17/2011 | 2/19/2011 |
| 2/20/2011 | 2/21/2011 | 2/22/2011 |
| 2/23/2011 | 2/25/2011 | 2/27/2011 |
| 2/28/2011 | 3/1/2011 | 3/2/2011 |
| 3/5/2011 | 3/15/2011 | 3/17/2011 |
| 11/30/2011 | 12/6/2011 | 12/7/2011 |
| 12/16/2011 | 12/29/2011 | 1/3/2012 |
| 1/4/2012 | 1/5/2012 | 1/7/2012 |
| 1/9/2012 | 1/10/2012 | 2/7/2012 |

| | | |
|---|---|---|
| 2/8/2012 | 2/12/2012 | 2/14/2012 |
| 2/17/2012 | 2/19/2012 | 2/20/2012 |
| 2/21/2012 | 2/22/2012 | 2/23/2012 |
| 2/25/2012 | 2/27/2012 | 2/28/2012 |
| 2/29/2012 | 3/1/2012 | 3/2/2012 |
| 3/5/2012 | 3/15/2012 | 3/17/2012 |
| 11/30/2012 | 12/6/2012 | 12/7/2012 |
| 12/16/2012 | 12/29/2012 | 1/3/2013 |
| 1/4/2013 | 1/5/2013 | 1/7/2013 |
| 1/9/2013 | 1/10/2013 | 2/7/2013 |
| 2/8/2013 | 2/12/2013 | 2/14/2013 |
| 2/17/2013 | 2/19/2013 | 2/20/2013 |
| 2/21/2013 | 2/22/2013 | 2/23/2013 |
| 2/25/2013 | 2/27/2013 | 2/28/2013 |
| 3/1/2013 | 3/2/2013 | 3/5/2013 |
| 3/15/2013 | 3/17/2013 | 11/30/2013 |
| 12/6/2103 | 12/7/2013 | 12/16/2013 |
| 1/3/2014 | 1/4/2014 | 1/5/2014 |
| 1/7/2014 | 1/9/2014 | 1/10/2014 |
| 2/7/2014 | 2/8/2014 | 2/12/2014 |
| 2/12/2014 | 2/17/2014 | 2/19/2014 |
| 2/20/2014 | 2/21/2014 | 2/22/2014 |
| 2/23/2014 | 2/25/2014 | 2/27/2014 |
| 2/28/2014 | 3/1/2014 | 3/2/2014 |
| 3/5/2014 | | |